**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ruben Garcia,<br><br>Defendant. | No. CR-26-00464-001-TUC-RM (JR)<br><br>**ORDER** |

On April 24, 2026, Magistrate Judge Jacqueline M. Rateau issued a Report and Recommendation ("R&R") (Doc. 41), recommending that this Court deny Defendant's Motion to Suppress (Doc. 24). On May 22, 2026, Defendant filed an Objection to the R&R (Doc. 42). The Government responded to the Objection. (Doc. 43.) For the following reasons, the Court will adopt the R&R and deny Defendant's Motion to Suppress.

## I.      Background

On January 10, 2026, Border Patrol Agents Mackenzie McLeod and Paulo Ramirez were engaged in a roving patrol in the area around Patagonia, Arizona. (Doc. 38 at 31-32.) At around 8:50 p.m.,[1] the agents were sitting in their fully marked Border Patrol vehicle, parked near mile marker 21 on State Route ("S.R.") 82. (*Id.* at 6, 8.) They were in a small "pullout area" facing the road, and the high beams of the vehicle were on, allowing the agents to see occupants of passing cars. (*Id.* at 11.) The agents chose this point strategically,

---

[1] The time of day was significant to the agents because it was close to their shift change; according to the agents, smugglers frequently attempt to take advantage of shift changes because there is an "operational gap" where agents are not out in the field. (Doc. 38 at 12.)

reasoning that this stretch of S.R. 82 is not commonly frequented by local traffic and residents of Patagonia, and that the agents could therefore focus on traffic that was more likely to have originated from Nogales with the ultimate goal of turning onto S.R. 83 to travel north. (*Id.* at 10.) Agent McLeod testified that in her experience, cars taking this route may be attempting to avoid a Border Patrol checkpoint on Interstate 19 ("I-19"). (*Id.* at 15.) She explained that taking S.R. 82 to S.R. 83 to travel north, as opposed to staying on the I-19, adds "significant" travel time. (*Id.*) Agent Ramirez estimated that the additional time is between one and two hours. (*Id.* at 41.)

As the agents observed the road, a four-door sedan drove by, going in the direction of S.R. 83. (*Id.* at 11.) The car was traveling at 35 miles per hour, the speed limit in the area. (*Id.*) The agents observed two adult male occupants of the car, and the agents estimated that both men were around 40 years old.[2] (*Id.*) After seeing the car pass, the agents began to follow it in order to take a look at the license plate. (*Id.* at 12.) As the car proceeded and the agents continued to follow, it reached the crossroads of S.R. 82 and 83, taking a left to go north on S.R. 83. (*Id.* at 13.) After the car entered S.R. 83, Agent McLeod contacted the Tucson Sector dispatch to request a records check on the vehicle, using the license plate number she observed. (*Id.* at 15.) The information returned in a records check includes the vehicle registration, whether the vehicle is stolen, and the border crossing history of the vehicle. (*Id.*)

Dispatch informed Agent McLeod that the vehicle was registered in Nogales, to a female born in 1945 or 1946. (*Id.* at 16, 39.) Given that the agents had observed two men appearing to be around 40 years of age in the car, this demographic mismatch was significant. (*Id.*) Agent McLeod testified that smugglers often use cars that do not belong to them to commit crimes in order to minimize the risk that their own vehicle will be confiscated. (*Id.*) In addition, Agent McLeod learned from dispatch that the vehicle had Treasury Enforcement Communication Systems ("TECS") alerts. (*Id.* at 17.) A TECS alert

---

[2] Agent Ramirez testified that he believed the men to be "approximately 30 to 50 years old," and Agent McLeod testified that she believed the men to be "roughly" 40 years old. (Doc. 38 at 35, 11.)

indicates that a vehicle or a person has been involved in prior criminal activity. (*Id.*) The TECS alerts on the vehicle were for drug smuggling unassociated with the registered owner. (*Id.* at 16-17.) To Agent McLeod, this signaled that the vehicle had been frequently used to commit a crime by someone other than the registered owner. (*Id.* at 17.)

Agent Ramirez conducted a border crossing history check, and found that the vehicle had last crossed the United States-Mexico border two days prior. (*Id.* at 41.) When a car crosses the border, the driver's details are catalogued, and Agent Ramirez found that Ruben Garcia was the individual who had last driven the car across the border. (*Id.* at 42.) Agent Ramirez was able to view Mr. Garcia's passport photo using this system, and he believed that Mr. Garcia was the same person he had seen driving the vehicle as it passed the agents when they were parked alongside S.R. 82. (*Id.*) Using his Government-issued phone, Agent Ramirez conducted a search for Mr. Garcia. (*Id.* at 42.) Multiple TCES alerts indicated that Mr. Garcia had previously been involved in narcotics smuggling through points of entry into the United States. (*Id.* at 43.) The agents discussed all of their observations, including the route of the vehicle and the TECS alerts on both Mr. Garcia and the vehicle. (*Id.* at 47.) They decided to conduct a stop of the vehicle, and upon speaking to the occupants determined that Mr. Garcia was the driver, and that his passenger did not have legal documentation to be in the United States. Mr. Garcia was arrested on suspicion of transporting an illegal alien for profit. (Doc. 1.)

Mr. Garcia moved to suppress all evidence obtained from the vehicle stop. (Doc. 24.) Judge Rateau's R&R concludes that reasonable suspicion existed for the stop in light of the vehicle's apparent avoidance of the Border Patrol checkpoint on the I-19, the proximity to agents' shift change, the mismatch between the vehicle's registered owner and the demographics of the individuals within the vehicle, the recent border crossing, and the TECS alerts on both the vehicle and Mr. Garcia. (Doc. 41.)

## II.    Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which

objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation"). Failure to object to the findings and recommendations of the magistrate judge "waives a party's right to review." Fed. R. Crim. P. 59(b)(2). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III.    Discussion

In his Objection to the R&R, Mr. Garcia contends that Magistrate Judge Rateau gave "undue weight" to the proximity to shift change and route of the vehicle's travel. (Doc. 42 at 6.) He further argues that the TECS alerts on Mr. Garcia were "not informative" because the alerts are more indicative of past as opposed to current criminal activity. (*Id.* at 7.) He also asserts that the TECS alerts on the vehicle were not informative because those alerts were not sufficiently specific as to who had been using the vehicle to commit crimes and when. (*Id.*) The Government responds that that Mr. Garcia's attempts to isolate various factors are contrary to the "totality of the circumstances" analysis this Court must engage in when determining the presence of reasonable suspicion. (Doc. 43.)

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968) and *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Border Patrol agents may perform a brief investigatory stop so long as it is "supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Raygoza-Garcia*, 902 F.3d 994, 999 (9th Cir. 2018); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) ("officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country").

"Reasonable suspicion requires specific, articulable facts which, together with

- 4 -

objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (internal quotations omitted). The district court's reasonable suspicion analysis must be assessed based on the "totality of the circumstances." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). To develop reasonable suspicion, an officer may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted).

In the context of stops made near the border, the Supreme Court has outlined factors to consider in determining whether reasonable suspicion existed, including the (1) characteristics of the area; (2) proximity to the border; (3) typical traffic patterns; (4) the officer's prior experience with alien traffic; (5) recent illegal border crossings in the area; (6) erratic or evasive behavior; (7) vehicle characteristics; and (8) behavior of people in the car. *Brignoni-Ponce*, 422 U.S. at 884–85. TECS alerts—an "investigative tool of the Department of Homeland Security that keeps track of individuals entering and exiting the country and of individuals involved in or suspected to be involved in crimes"—may contribute to a finding of reasonable suspicion. *United States v. Cotterman*, 709 F.3d 952, 957 n.1; 968-69 (9th Cir. 2013).

Here, considered in their totality, the observations of Agents McLeod and Ramirez gave rise to reasonable suspicion. The agents noted the mismatch between the driver of the car, a middle-aged man, and the individual it was registered to, an approximately 80-year-old woman, and found this mismatch to be consistent in their experience with smuggling activity. They further noted the TECS alerts on both the vehicle itself and the presumed driver of the vehicle. As recognized in *Cotterman*, the TECS alerts were indicative of potential ongoing criminal activity, and not merely past criminal activity as Mr. Garcia contends. Although Mr. Garcia argues that the TECS alert on the vehicle was not sufficiently specific, it did indicate that alert was associated with someone other than the

registered owner; since the agents could quite clearly see that the registered owner was not driving the vehicle at the time they observed it, the TECS alert properly contributed to their judgment that reasonable suspicion existed. Moreover, the agents recognized that the vehicle's route of travel is one used by individuals attempting to avoid a Border Patrol checkpoint on the I-19, and that the vehicle was traveling at a time close to shift change when smugglers attempt to take advantage of reduced Border Patrol presence.[3] Altogether, considered in their totality, the above factors gave Agents McLeod and Ramirez the reasonable suspicion required to execute their stop of Mr. Garcia's vehicle.

Accordingly,

**IT IS ORDERED** that Defendant's Objection (Doc. 42) is **denied**. The Report and Recommendation (Doc. 41) is **accepted and adopted**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress (Doc. 24) is **denied**.

Dated this 30th day of June, 2026.

_____
Honorable Rosemary Márquez
United States District Judge

---

[3] Mr. Garcia argues that the R&R overly relies on the agents' testimony regarding the proximity to shift change, but presents nothing to contravene the agents' assertions that the time at which they observed Mr. Garcia driving was notable.